James C. Shah (SBN 260435)
Shepherd, Finkelman, Miller & Shah, LLP
44 Montgomery Street, Suite 650
San Francisco, CA 94104
Telephone: (415) 429-5272
Facsimile: (866) 300-7367
jshah@sfmslaw.com

Harris L. Pogust
Andrew J. Sciolla
Pogust Braslow & Millrood, LLC
Eight Tower Bridge, Suite 940
161 Washington Street
Conshohocken, PA 19428
Telephone: (610) 941-4202
Facsimile: (610) 941-4245
hpogust@pbmattorneys.com
asciolla@pbmattorneys.com

*Attorneys for Plaintiffs and the Proposed Classes*

# IN THE UNITED STATES DISTRICT COURT

# FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| MAYE RAMIREZ, FREDDY TREJOS, ANDRIY CHORNY, GILDER WHITLOCK, BRUCE BRAKE, DAN FEIST, ROBERT BETSWORTH, JOHN VAUGHAN, DAVID GOODRICH, MELVIN ALEXANDER, BEVERLY SAYERS, MELVIN MCCONNELL, IYANSE RODRIGUEZ, and THOMAS HUTCHISON on behalf of themselves and all others similarly situated, <br><br> Plaintiffs, <br><br> v. <br><br> FCA US LLC, <br><br> Defendant. | No. <br><br> CLASS ACTION COMPLAINT <br><br> **DEMAND FOR JURY TRIAL** |

Plaintiffs, Maye Ramirez, Freddy Trejos, Andriy Chorny, Gilder Whitlock, Bruce Brake, Dan Feist, Robert Betsworth, John Vaughan, Melvin Alexander, Beverly Sayers, David Goodrich, Melvin McConnell, Iyanse Rodriguez and Thomas Hutchison (collectively, "Plaintiffs"), by and through their undersigned counsel, bring this class action individually and on behalf of all others similarly situated against Defendant, FCA US LLC ("FCA" or "Defendant"), and allege as follows upon information and

belief, except as to allegations specifically pertaining to Plaintiffs, which are made upon knowledge:

**NATURE OF THE ACTION**

1.      Plaintiffs bring this action individually and on behalf of classes of California consumers (the "California Class"), Colorado consumers (the "Colorado Class"), Florida consumers (the "Florida Class"), Indiana consumers (the "Indiana Class"), Maryland Consumers (the "Maryland Class"), Minnesota consumers (the "Minnesota Class"), Missouri consumers (the "Missouri Class"), North Carolina consumers (the "North Carolina" class), Pennsylvania consumers (the "Pennsylvania Class"), and Texas consumers (the "Texas Class") (collectively, the "Class" or "Classes"), as more fully defined below, for the benefit and protection of all current and former owners or lessees of the diesel-powered Dodge Ram 1500 EcoDiesel vehicles (model years 2014-2016) and the diesel-powered Jeep Grand Cherokee EcoDiesel (model years 2014-2016) (the "Vehicle(s)").

2.      As explained in more detail below, FCA intentionally marketed these Vehicles in a false and deceptive manner by misrepresenting the Vehicles as having "clean diesel" engines that were environmentally friendly and produced low emissions when FCA knew that the Vehicles were neither clean nor environmentally friendly, and instead produced unlawfully high levels of emissions during regular use.

3.      To carry out its deception, FCA concealed from consumers that it installed Auxiliary Emissions Control Devices ("AECD(s)"), or defeat devices,[1] in the Vehicles, which permitted the Vehicles to pass emissions testing and appear environmentally friendly, and then reduced the effectiveness of the emissions control systems during regular use, such that they produced unlawfully high levels of emissions (the "Deception").

4.      This conduct was likely to, and did, deceive reasonable consumers as to the environmental friendliness of the Vehicles.

---

[1] An AECD is "any element of design which senses temperature, vehicle speed, engine RPM, transmission gear, manifold vacuum or any other parameter for the purpose of activating, modulating, delaying, or deactivating the operation of any part of the emission control system." 40 C.F.R. § 86.1803-01. A defeat device is an AECD "that reduces the effectiveness of the emission control system under conditions which may reasonably be expected to be encountered in normal vehicle operation and use," and does not fall into one of the exceptions listed in the statute. *Id.*

-2-

5.      Because FCA failed to disclose that the Vehicles contained defeat devices and because the defeat devices caused the Vehicles to appear compliant with the strict regulations promulgated by the Environmental Protection Agency (the "EPA"), FCA's fraudulent and deceptive conduct could not be detected with any reasonable diligence.

6.      Indeed, FCA's fraudulent conduct went undetected until the EPA uncovered it and publicized it in a January 12, 2017 letter.

7.      Rules and regulations regarding air pollution prevention were created, in part, "to protect and enhance the quality of the Nation's air resources so as to promote the public health and welfare and the productive capacity of its population."[2]

8.      Automobiles, in particular, are regulated in recognition of the fact that "the growth in the amount and complexity of air pollution brought about by . . . the increasing use of motor vehicles . . . has resulted in mounting dangers to public health and welfare."[3]

9.      The use of defeat devices to manipulate the Vehicles' image, such that they appeared environmentally friendly when, in fact, they were not, was material to Plaintiffs and the members of the Class in deciding to purchase or lease their Vehicles.  Had Plaintiffs and the members of the Class known about the Deception at the time of purchase or lease, they would not have bought or leased the Vehicles, or would have paid less for them.

10.     Plaintiffs bring this action on behalf of themselves and all other similarly situated consumers to stop FCA's pattern of deceptive and fraudulent conduct and to obtain redress for those who have purchased or leased the Vehicles.  Plaintiffs allege violations of common law fraudulent concealment, and violations of the California Consumer Legal Remedies Act, Cal. Civ. Code § 1750, *et seq.* ("CLRA"); the California Unfair Competition Law, Cal. Bus. Code § 1750, *et seq.* ("UCL"); the California False Advertising Law, Cal. Bus. & Prof. Code § 17500, *et seq.* ("FAL"); the Colorado Consumer Protection Act, Colo. Rev. Stat. § 6-1-101, *et seq.*, ("CCPA"); the Florida Deceptive and Unfair Trade Practices Act, Fla. Stat. § 501.201, *et seq.* ("FDUTPA"); the Indiana Deceptive Consumer

---

[2] 42 U.S.C. § 7401(b)(1).

[3] *Id.* § 7401(a)(2).

1  Sales Practices Act, I.C. § 24-5-0.5, *et seq.* ("IDCSPA"); the Maryland Consumer Protection Act, Md.

2  Code Ann., Com. Law. § 13-301, *et seq.*, ("MCPA"); the Minnesota Prevention of Consumer Fraud Act,

3  Minn. Stat. §§ 325D.43 and 325F.68, *et seq.* ("MPCFA"); the Missouri Merchandising Practices Act,

4  Mo. Rev. Stat. § 407.010, *et seq.* ("MMPA"); the North Carolina Unfair Trade Practices Act, N.C. Gen.

5  Stat. § 75-1.1, *et seq.* ("NCUTPA"); the Pennsylvania Unfair Trade Practices and Consumer Protection

6  Law, 73 P.S. § 201-1, *et seq.* ("PUTPCPL") and the Texas Deceptive Trade Practices-Consumer

7  Protection Act ("DTPA"), Tex. Bus. & Com. Code § 17.41, *et seq.*

## JURISDICTION AND VENUE

9  11.     This Court has subject matter jurisdiction under 20 U.S.C. § 1332(a) and 28 U.S.C. §

10  1332(d)(2) because the matter in controversy exceeds five million dollars ($5,000,000.00), exclusive of

11  interests and costs, and at least one member of the putative Classes is a citizen of a state different than

12  the Defendant.

13  12.     Venue is proper in this judicial district under 28 U.S.C. § 1391 because FCA does

14  business throughout this district and a substantial part of the acts and omissions giving rise to Plaintiffs'

15  claims occurred in this district.

## PARTIES

17  **California Plaintiffs**

18  13.     Plaintiff, Maye Ramirez ("Ramirez"), is, and at all times relevant to this action has been,

19  a resident of College Park, California, and, thus, is a citizen of California.  Ramirez purchased a 2016

20  Ram 1500 EcoDiesel on or about December 15, 2015 from Rydell Chrysler Dodge Jeep Ram in San

21  Fernando, California. At the time of purchase, FCA advertised Ramirez's Vehicle as clean and

22  environmentally friendly, although FCA knew that Ramirez's Vehicle actually produced unlawfully

23  high levels of emissions.  FCA concealed this fact by installing a defeat device in Ramirez's Vehicle so

24  that it would pass the emissions testing required by the EPA and appear compliant.  However, during

25  regular use, the Vehicle was programmed to reduce its emissions control performance, which resulted in

26  the Vehicle producing unlawfully high emissions.  This went undetected because FCA failed to disclose

27  to Ramirez that the Vehicle contained a defeat device, and the defeat device caused the Vehicle to

28  appear emissions compliant.  FCA knew that the Vehicle's clean image that it vigorously advertised was

CLASS ACTION COMPLAINT

merely a ruse.  As a result, Ramirez was deceived.

14.    Plaintiff, Freddy Trejos ("Trejos"), is, and at all times relevant to this action was, a resident of Bell Gardens, California, and, thus, is a citizen of California.  Trejos purchased a 2016 Ram 1500 EcoDiesel on or about July 23, 2016.  At the time of purchase, FCA advertised Trejos' Vehicle as clean and environmentally friendly, although FCA knew that Trejos' Vehicle actually produced unlawfully high levels of emissions.  FCA concealed this fact by installing a defeat device in Trejos' Vehicle so that it would pass the emissions testing required by the EPA and appear compliant.  However, during regular use, the Vehicle was programmed to reduce its emissions control performance, which resulted in the Vehicle producing unlawfully high emissions.  This went undetected because FCA failed to disclose to Trejos that the Vehicle contained a defeat device, and the defeat device caused the Vehicle to appear emissions compliant.  FCA knew that the Vehicle's clean image that it vigorously advertised was merely a ruse.  As a result, Trejos was deceived.

**Colorado Plaintiff**

15.    Plaintiff, Thomas Hutchison ("Hutchison"), is, and at all times relevant to this action has been, a resident of Colorado Springs, Colorado, and, thus, is a citizen of Colorado.  Hutchison purchased a 2014 Ram 1500 EcoDiesel on May 29, 2015.  At the time of purchase, FCA advertised Hutchison's Vehicle as clean and environmentally friendly, although FCA knew that Hutchison's Vehicle actually produced unlawfully high levels of emissions.  FCA concealed this fact by installing a defeat device in Hutchison's Vehicle so that it would pass the emissions testing required by the EPA and appear compliant.  However, during regular use, the Vehicle was programmed to reduce its emissions control performance, which resulted in the Vehicle producing unlawfully high emissions.  This went undetected because FCA failed to disclose to Hutchison that the Vehicle contained a defeat device, and the defeat device caused the Vehicle to appear emissions compliant.  FCA knew that the Vehicle's clean image that it vigorously advertised was merely a ruse.  As a result, Hutchison was deceived.

**Florida Plaintiffs**

16.    Plaintiff, Gilder Whitlock ("Whitlock"), is, and at all times relevant to this action has been, a resident of Jacksonville, Florida, and, thus, is a citizen of Florida.  Whitlock purchased a 2015 Ram 1500 EcoDiesel on or about November 10, 2016.  At the time of purchase, FCA advertised

CLASS ACTION COMPLAINT

Whitlock's Vehicle as clean and environmentally friendly, although FCA knew that Whitlock's Vehicle actually produced unlawfully high levels of emissions. FCA concealed this fact by installing a defeat device in Whitlock's Vehicle so that it would pass the emissions testing required by the EPA and appear compliant. However, during regular use, the Vehicle was programmed to reduce its emissions control performance, which resulted in the Vehicle producing unlawfully high emissions. This went undetected because FCA failed to disclose to Whitlock that the Vehicle contained a defeat device, and the defeat device caused the Vehicle to appear emissions compliant. FCA knew that the Vehicle's clean image that it vigorously advertised was merely a ruse. As a result, Whitlock was deceived.

17. Plaintiff, Andriy Chorny ("Chorny"), is, and at all times relevant to this action has been, a resident of Palm Coast, Florida, and, thus, is a citizen of Florida. Chorny purchased a 2016 Ram 1500 EcoDiesel. At the time of purchase, FCA advertised Chorny's Vehicle as clean and environmentally friendly, although FCA knew that Chorny's Vehicle actually produced unlawfully high levels of emissions. FCA concealed this fact by installing a defeat device in Chorny's Vehicle so that it would pass the emissions testing required by the EPA and appear compliant. However, during regular use, the Vehicle was programmed to reduce its emissions control performance, which resulted in the Vehicle producing unlawfully high emissions. This went undetected because FCA failed to disclose to Chorny that the Vehicle contained a defeat device, and the defeat device caused the Vehicle to appear emissions compliant. FCA knew that the Vehicle's clean image that it vigorously advertised was merely a ruse. As a result, Chorny was deceived.

18. Plaintiff, David Goodrich ("Goodrich"), is, and at all times relevant to this action has been, a resident of Palm Coast, Florida, and, thus, is a citizen of Florida. Goodrich purchased a 2015 Ram 1500 EcoDiesel on or about December 21, 2016. At the time of purchase, FCA advertised Goodrich's Vehicle as clean and environmentally friendly, although FCA knew that Goodrich's Vehicle actually produced unlawfully high levels of emissions. FCA concealed this fact by installing a defeat device in Goodrich's Vehicle so that it would pass the emissions testing required by the EPA and appear compliant. However, during regular use, the Vehicle was programmed to reduce its emissions control performance, resulting in the Vehicle producing unlawfully high emissions. This went undetected because FCA failed to disclose to Goodrich that the Vehicle contained a defeat device, and the defeat

CLASS ACTION COMPLAINT

device caused the Vehicle to appear emissions compliant.  FCA knew that the Vehicle's clean image that it vigorously advertised was merely a ruse.  As a result, Goodrich was deceived.

19.     Plaintiff, Iyanse Rodriguez ("Rodriguez"), is, and at all times relevant to this action has been, a resident of Miami, Florida, and, thus, is a citizen of Florida.  Rodriguez purchased a 2014 Jeep Grand Cherokee EcoDiesel on or about May 19, 2015.  At the time of purchase, FCA advertised Rodriguez's Vehicle as clean and environmentally friendly, although FCA knew that Rodriguez's Vehicle actually produced unlawfully high levels of emissions.  FCA concealed this fact by installing a defeat device in Rodriguez's Vehicle so that it would pass the emissions testing required by the EPA and appear compliant.  However, during regular use, the Vehicle was programmed to reduce its emissions control performance, resulting in the Vehicle producing unlawfully high emissions.  This went undetected because FCA failed to disclose to Rodriguez that the Vehicle contained a defeat device, and the defeat device caused the Vehicle to appear emissions compliant.  FCA knew that the Vehicle's clean image that it vigorously advertised was merely a ruse.  As a result, Rodriguez was deceived.

**Indiana Plaintiff**

20.     Plaintiff, Bruce Brake ("Brake"), is, and all at times relevant to this action has been, a resident of Muncie, Indiana, and, thus, is a citizen of Indiana.  Brake purchased a 2015 Ram 1500 EcoDiesel.  At the time of purchase, FCA advertised Brake's Vehicle as clean and environmentally friendly, although FCA knew that Brake's Vehicle actually produced unlawfully high levels of emissions.  FCA concealed this fact by installing a defeat device in Brake's Vehicle so that it would pass the emissions testing required by the EPA and appear compliant.  However, during regular use, the Vehicle was programmed to reduce its emissions control performance, which resulted in the Vehicle producing unlawfully high emissions.  This went undetected because FCA failed to disclose to Brake that the Vehicle contained a defeat device, and the defeat device caused the Vehicle to appear emissions compliant.  FCA knew that the Vehicle's clean image that it vigorously advertised was merely a ruse.  As a result, Brake was deceived.

**Maryland Plaintiff**

21.     Plaintiff, Beverly Sayers ("Sayers"), is, and at all times relevant to this action has been, a resident of Springfield, West Virginia, and, thus, is a citizen of West Virginia.  However, Sayers

CLASS ACTION COMPLAINT

purchased a 2016 Ram 1500 EcoDiesel in Cumberland, Maryland.  At the time of purchase, FCA advertised Sayers' Vehicle as clean and environmentally friendly, although FCA knew that Sayers' Vehicle actually produced unlawfully high levels of emissions.  FCA concealed this fact by installing a defeat device in Sayers' Vehicle so that it would pass the emissions testing required by the EPA and appear compliant.  However, during regular use, the Vehicle was programmed to reduce its emissions control performance, which resulted in the Vehicle producing unlawfully high emissions.  This went undetected because FCA failed to disclose to Sayers that the Vehicle contained a defeat device, and the defeat device caused the Vehicle to appear emissions compliant.  FCA knew that the Vehicle's clean image that it vigorously advertised was merely a ruse.  As a result, Sayers was deceived.

**Minnesota Plaintiff**

22.    Plaintiff, Dan Feist ("Feist"), is, and at all times relevant to this action has been, a resident of Northfield, Minnesota, and, thus, is a citizen of Minnesota.  Feist purchased a 2016 Ram 1500 EcoDiesel on or about June 2016.  At the time of purchase, FCA advertised Feist's Vehicle as clean and environmentally friendly, although FCA knew that Feist's Vehicle actually produced unlawfully high levels of emissions.  FCA concealed this fact by installing a defeat device in Feist's Vehicle so that it would pass the emissions testing required by the EPA and appear compliant. However, during regular use, the Vehicle was programmed to reduce its emissions control performance, which resulted in the Vehicle producing unlawfully high emissions.  This went undetected because FCA failed to disclose to Feist that the Vehicle contained a defeat device, and the defeat device caused the Vehicle to appear emissions compliant.  FCA knew that the Vehicle's clean image that it vigorously advertised was merely a ruse.  As a result, Feist was deceived.

**Missouri Plaintiff**

23.    Plaintiff, Robert Betsworth ("Betsworth"), is, and at all times relevant to this action has been, a resident of Kansas City, Missouri, and, thus, is a citizen of Missouri.  Betsworth purchased a 2015 Jeep Grand Cherokee EcoDiesel on or about March 16, 2016.  At the time of purchase, FCA advertised Betsworth's Vehicle as clean and environmentally friendly, although FCA knew that Betsworth's Vehicle actually produced unlawfully high levels of emissions.  FCA concealed this fact by installing a defeat device in Betsworth's Vehicle so that it would pass the emissions testing required by

-8-

the EPA and appear compliant. However, during regular use, the Vehicle was programmed to reduce its emissions control performance, which resulted in the Vehicle producing unlawfully high emissions. This went undetected because FCA failed to disclose to Betsworth that the Vehicle contained a defeat device, and the defeat device caused the Vehicle to appear emissions compliant. FCA knew that the Vehicle's clean image that it vigorously advertised was merely a ruse. As a result, Betsworth was deceived.

### North Carolina Plaintiff

24. Plaintiff, Melvin McConnell ("McConnell"), is, and at all times relevant to this action was, a resident of Hendersonville, North Carolina, and, thus, is a citizen of North Carolina. McConnell purchased a 2015 Ram 1500 EcoDiesel on May 1, 2015. At the time of purchase, FCA advertised McConnell's Vehicle as clean and environmentally friendly, although FCA knew that McConnell's Vehicle actually produced unlawfully high levels of emissions. FCA concealed this fact by installing a defeat device in McConnell's Vehicle so that it would pass the emissions testing required by the EPA and appear compliant. However, during regular use, the Vehicle was programmed to reduce its emissions control performance, resulting in the Vehicle producing unlawfully high emissions. This went undetected because FCA failed to disclose to McConnell that the Vehicle contained a defeat device, and the defeat device caused the Vehicle to appear emissions compliant. FCA knew that the Vehicle's clean image that it vigorously advertised was merely a ruse. As a result, McConnell was deceived.

### Pennsylvania Plaintiff

25. Plaintiff, John Vaughan ("Vaughan"), is, and at all times relevant to this action was, a resident of Walnutport, Pennsylvania, and, thus, is a citizen of Pennsylvania. Vaughan purchased a 2015 Ram 1500 EcoDiesel from Brown Daub Dodge Chrysler Jeep in Bath, Pennsylvania. At the time of purchase, FCA advertised Vaughan's Vehicle as clean and environmentally friendly, although FCA knew that Vaughan's Vehicle actually produced unlawfully high levels of emissions. FCA concealed this fact by installing a defeat device in Vaughan's Vehicle so that it would pass the emissions testing required by the EPA and appear compliant. However, during regular use, the Vehicle was programmed to reduce its emissions control performance, resulting in the Vehicle producing unlawfully high

CLASS ACTION COMPLAINT

emissions. This went undetected because FCA failed to disclose to Vaughan that the Vehicle contained a defect device, and the defeat device caused the Vehicle to appear emissions compliant. FCA knew that the Vehicle's clean image that it vigorously advertised was merely a ruse. As a result, Vaughan was deceived.

**Texas Plaintiff**

26.     Plaintiff, Melvin Alexander ("Alexander"), is, and at all times relevant to this action has been, a resident of Horseshoe Bay, Texas, and, thus, is a citizen of Texas. Alexander purchased a 2015 Ram 1500 EcoDiesel on or about September 28, 2015 from Benny Boyd Andrews LLC in Andrews, Texas. At the time of purchase, FCA advertised Alexander's Vehicle as clean and environmentally friendly, although FCA knew that Alexander's Vehicle actually produced unlawfully high levels of emissions. FCA concealed this fact by installing a defeat device in Alexander's Vehicle so that it would pass the emissions testing required by the EPA and appear compliant. However, during regular use, the Vehicle was programmed to reduce its emissions control performance, which resulted in the Vehicle producing unlawfully high emissions. This went undetected because FCA failed to disclose to Alexander that the Vehicle contained a defeat device, and the defeat device caused the Vehicle to appear emissions compliant. FCA knew that the Vehicle's clean image that it vigorously advertised was merely a ruse. As a result, Alexander was deceived.

**Defendant**

27.     Defendant, FCA, is a Delaware limited liability company with its principal place of business in Auburn Hills, Michigan, and, thus, FCA is, and all times relevant to this action has been, a citizen of Delaware and Michigan. FCA is a wholly-owned subsidiary of Fiat Chrysler Automobiles N.V., a public limited liability company organized under the laws of the Netherlands with its principal place of business in London, England. At all times relevant hereto, FCA designed, manufactured, marketed, and sold the Vehicles in California, Colorado, Florida, Indiana, Maryland, Minnesota, Missouri, North Carolina, Pennsylvania, and Texas.

## SUBSTANTIVE ALLEGATIONS

### FCA Misrepresented the Vehicles as Clean and Environmentally Friendly

28.     Plaintiffs bring this action, individually and on behalf of all other similarly situated

consumers, who purchased or leased the Vehicles from FCA in California, Colorado, Florida, Indiana, Maryland, Minnesota, Missouri, North Carolina, Pennsylvania, Texas, and West Virginia.

29.     Each of the Vehicles came equipped with a 3.0-liter EcoDiesel V6 engine ("EcoDiesel"), which FCA began heavily marketing in early 2013 and launched in early 2014 "to meet stringent emissions and on-board diagnostic regulations."[4]

30.     The EcoDiesel features the MultiJet 2 common-rail fuel-injection system, Selective Catalytic Reduction, high pressure cooled Exhaust Gas Recirculation, variable swirl intake ports, and a variable-geometry turbocharger, all of which FCA states enable the engine to reduce emissions.[5]

31.     Early marketing of the EcoDiesel distinguished it as the first of its kind, calling it "the right tool for the right emissions," as depicted below.    FCA emphasized the EcoDiesel's positive environmental impact.  For example, FCA featured its capability to use biofuel, which "produces less air pollutants and less greenhouse gas emissions," and makes the EcoDiesel "the cleanest light duty engine available."

---

[4]     Fiat    2013    Annual    Report,    *available    at*    https://www.fcagroup.com/en-US/investor_relations/financial_reports/FiatDocuments/Bilanci/2013/2013_annual_report.pdf?redirectFromFiatspa=1.

[5]     *Ram-1500    EcoDiesel    in    a    Class    of    Its    Own*    (Apr.    17,    2014), http://360.fcanorthamerica.com/featured_news/2014-ram-1500-ecodiesel-sets-new-fuel-economy-benchmark/.

CLASS ACTION COMPLAINT



32.    FCA also emphasized the EcoDiesel's fuel efficiency and powerful torque, which, combined with its reduced emissions, is a strong selling point given that it is challenging to balance greater power with reduced emissions.  The message with respect to the EcoDiesel is that one need not sacrifice power in favor of environmental friendliness, and vice versa.

33.    FCA also heavily emphasized the Vehicles' fuel efficiency.  In early marketing stages,

CLASS ACTION COMPLAINT

FCA described the EcoDiesel as a 30% increase in fuel economy over FCA's Pentastar V-6 Engine, which "allows for a best-in-class driving range of more 730 miles."[6]

34.    Vehicles equipped with the EcoDiesel have received awards, including the one described below, because of their combined fuel efficiency, power, and environmental friendliness.

35.    After being voted one of Wards' ten best engines for 2016 for the third consecutive year, Bob Lee, Vice President and Head of Engine, Powertrain, and Electrified Propulsion System Engineering at FCA, stated: "We are never content to rest on our laurels, so our engineering team worked overtime to make a great engine even greater."[7]  He added, "For model-year 2016, customers who choose our 3.0-liter EcoDiesel V-6 will experience more of the attributes they were seeking when FCA US became the first automaker to equip a light-duty pickup with clean diesel technology."

**The EPA Uncovers FCA's Deception**

36.    A little over a year after Mr. Lee praised the FCA engineering team for making "a great engine greater," the EPA revealed that the engineering team had, in fact, been "resting on [their] laurels" when it came to ensuring that the EcoDiesel complied with environmental regulations.

37.    By letter dated January 12, 2017,[8] the EPA informed FCA that it had discovered that FCA failed to disclose the presence of AECDs in model years 2014-2016 Dodge Ram 1500 vehicles and model years 2014-2016 Jeep Grand Cherokee vehicles.

38.    While FCA had been originally granted a certificate of conformity ("COC") with respect to the Vehicles, the EPA stated that the failure to disclose the presence of the defeat devices in its initial application meant that "these vehicles do not conform in all material respects to the vehicle specifications described in the applications for the COCs that purportedly cover them," and, thus, FCA

---

[6] *All-new Clean 3.0-liter EcoDiesel V-6 and Eight-speed Automatic Transmission Result in 30 mpg Jeep® Grand Cherokee* (Jan. 14, 2013), *available at* http://media.fcanorthamerica.com/newsrelease.do?id=13687&mid=1.

[7] *FCA US LLC Scores Wards 10 Best Engines 'Three-Peat' with EcoDiesel V-6; Lone Diesel on List for Second Year Straight* (December 10, 2015), *available at* http://www.prnewswire.com/news-releases/fca-us-llc-scores-wards-10-best-engines-three-peat-with-ecodiesel-v-6-lone-diesel-on-list-for-second-straight-year-300191386.html.

[8] EPA Notice of Violation to FCA (Jan. 12, 2017), *available at* https://www.epa.gov/sites/production/files/2017-01/documents/fca-caa-nov-2017-01-12.pdf.

CLASS ACTION COMPLAINT

violated the Clean Air Act, 42 U.S.C. § 7522(a)(1), ("CAA") every time it "sold, offered for sale, introduced into commerce, or delivered for introduction into commerce or imported these vehicles (or caused any of the foregoing acts with respect to the vehicles)."

39.     The EPA stated that the use of AECDs causes "excess emissions of nitrogen oxides that may reasonably be expected to be encountered in normal vehicle operation and use."

40.     Some of the AECDs FCA installed in the Vehicles caused the Vehicles to perform differently when undergoing emissions testing than when operating in regular use.

41.     The EPA concluded that because the AECDs "occur in operating conditions that may not be part of the Federal emission test procedure" and "may not be justified in terms of protecting the vehicle against damage or accident," the AECDs do not qualify for any of the defeat device exceptions, and they may be defeat devices.

42.     The EPA added:

> [D]espite having an opportunity to do so, FCA has failed to demonstrate that FCA did not know, or should not have known, that a principal effect of one or more of these AECDs was to bypass, defeat, or render inoperative one or more elements of design installed to comply with emissions standards under the CAA.

**Plaintiffs and the Members of the Class Have Been Injured**

43.     When Plaintiffs and the members of the Class purchased or leased their Vehicles, they purchased or leased what they reasonably thought was an environmentally friendly automobile that did not require compromise on power.

44.     Vehicles equipped with the EcoDiesel engine came at a greater cost to Plaintiffs and the members of the Class.  For example, the 2015 Ram 1500 Laramie Limited with a 4x2   crew cab and HEMI® V-8 engine cost $50,675, whereas the same truck with the EcoDiesel engine cost $53,795 (**$3,120** more).[9]  The 2015 Ram 1500 Laramie Limited with a 4x4 crew cab and HEMI® V-8 engine cost $54,180, whereas the same truck with the EcoDiesel engine cost $57,300 (**$3,120** more).[10]

---

[9] *Ram Announces Pricing for 2015 1500 Rebel and Laramie Limited* (June 11, 2015), *available at* http://360.fcanorthamerica.com/recommended_reads/ram-announces-pricing-for-2015-1500-rebel-and-laramie-limited/.

[10] *Id.*

CLASS ACTION COMPLAINT

45.     Plaintiffs and the members of the Class paid more for the Vehicles with the reasonable expectation that the Vehicles would operate in a clean and environmentally friendly manner, as FCA consistently advertised.  Instead, they did not receive this benefit, for which they paid more.  For example, the individuals who purchased a 2014 Ram 1500 Laramie Limited with an EcoDiesel engine paid $3,120 more for Vehicles that do not provide the benefits to justify the premium paid.

46.     Any modifications made to the Vehicles to bring them into EPA compliance will reduce the efficiency of the other benefits FCA advertised (*i.e.*, fuel efficiency and power).  Thus, the Vehicles' performance will substantially downgrade from what Plaintiffs and the members of the Class are used to and expect, and will result in further diminution of the Vehicles' value.

## CLASS ACTION ALLEGATIONS

47.     Plaintiffs bring this lawsuit as a class action on behalf of themselves and similarly situated purchasers and lessees of the Vehicles, pursuant to Federal Rule of Civil Procedure 23(b)(2) and (3).

48.     The Classes that Plaintiffs seek to represent are defined as follows:

**California Class:**
All persons in California who purchased or leased a diesel-powered Dodge Ram 1500 EcoDiesel Vehicle (model years 2014-2016), or a diesel-powered Jeep Grand Cherokee EcoDiesel Vehicle (model years 2014-2016).

**Colorado Class:**
All persons in Colorado who purchased or leased a diesel-powered Dodge Ram 1500 EcoDiesel Vehicle (model years 2014-2016), or a diesel-powered Jeep Grand Cherokee EcoDiesel Vehicle (model years 2014-2016).

**Florida Class:**
All persons in Florida who purchased or leased a diesel-powered Dodge Ram 1500 EcoDiesel Vehicle (model years 2014-2016), or a diesel-powered Jeep Grand Cherokee EcoDiesel Vehicle (model years 2014-2016).

**Indiana Class:**
All persons in Indiana who purchased or leased a diesel-powered Dodge Ram 1500 EcoDiesel Vehicle (model years 2014-2016), or a diesel-powered Jeep Grand Cherokee EcoDiesel Vehicle (model years 2014-2016).

**Maryland Class:**
All persons in Maryland who purchased or leased a diesel-powered Dodge Ram 1500 EcoDiesel Vehicle (model years 2014-2016), or a diesel-powered Jeep Grand Cherokee EcoDiesel Vehicle (model years 2014-2016).

**Minnesota Class:**
All persons in Minnesota who purchased or leased a diesel-powered Dodge Ram 1500 EcoDiesel

Vehicle (model years 2014-2016), or a diesel-powered Jeep Grand Cherokee EcoDiesel Vehicle (model years 2014-2016).

**Missouri Class:**
All persons in Missouri who purchased or leased a diesel-powered Dodge Ram 1500 EcoDiesel Vehicle (model years 2014-2016), or a diesel-powered Jeep Grand Cherokee EcoDiesel Vehicle (model years 2014-2016).

**North Carolina Class:**
All persons in North Carolina who purchased or leased a diesel-powered Dodge Ram 1500 EcoDiesel Vehicle (model years 2014-2016), or a diesel-powered Jeep Grand Cherokee EcoDiesel Vehicle (model years 2014-2016).

**Pennsylvania Class:**
All persons in Pennsylvania who purchased or leased a diesel-powered Dodge Ram 1500 EcoDiesel Vehicle (model years 2014-2016), or a diesel-powered Jeep Grand Cherokee EcoDiesel Vehicle (model years 2014-2016).

**Texas Class:**
All persons in Texas who purchased or leased a diesel-powered Dodge Ram 1500 EcoDiesel Vehicle (model years 2014-2016), or a diesel-powered Jeep Grand Cherokee EcoDiesel Vehicle (model years 2014-2016).

Excluded from the Class is Defendant, as well as Defendant's affiliates, employees, officers and directors, including franchised dealers; any person who is seeking damages for physical injury as a result of the EcoDiesel Vehicles at issue in this litigation; and the Judge(s) to whom this case is assigned. Plaintiffs reserve the right to amend the definition of the Class if discovery and/or further investigation reveal that the Class should be expanded or otherwise modified.

49.    **Numerosity/Impracticability of Joinder:** The Class is so numerous that joinder of all members is impracticable.  Plaintiffs estimate that there are thousands of members of the Class.  The members of the Class are readily identifiable from information and records in FCA's possession, custody, or control.  The disposition of these claims will provide substantial benefits to the members of the Class.

50.    **Commonality and Predominance:** Common questions of law and fact predominate over any question affecting only individual members of the Class.  These common legal and factual questions, which do not vary between members of the Class and which may be determined without reference to the individual circumstances of any members of the Class, include, but are not limited to, the following:

a.    Whether the Vehicles contained defeat devices that assisted them in passing emissions testing;

-16-

b.      Whether the Vehicles would pass emissions testing without the presence of a defeat device;

c.      Whether FCA knowingly installed defeat devices in the Vehicles to assist them in passing emissions testing;

d.      Whether FCA knew the Vehicles produced excessive emissions, noncompliant with regulations and requirements, and if so, for how long;

e.      Whether FCA failed to disclose facts about the Vehicles producing excessive emissions to Plaintiffs and the members of the Class;

f.      Whether FCA failed to disclose facts about the presence of defeat devices in the Vehicles;

g.      Whether FCA mispresented the Vehicles as clean and environmentally friendly;

h.      Whether FCA fraudulently concealed the fact that the Vehicles are neither clean nor environmentally friendly;

i.      Whether FCA's conduct violated consumer protection statutes in California, Colorado, Florida, Indiana, Maryland, Minnesota, Missouri, North Carolina, Pennsylvania and Texas;

j.      Whether Plaintiffs and the members of the Class purchased their Vehicles at an inflated price; and

k.      Whether Plaintiffs and the members of the Class are entitled to equitable relief and/or damages and other monetary relief, and if so, in what amount.

51.    **Typicality:** Plaintiffs' claims are typical of the claims of the proposed Class they seek to represent.  Plaintiffs and the members of the Class have been injured by the same deceptive practices in which FCA has engaged.  Plaintiffs' claims arise from the same deceptive practices and course of conduct that give rise to the claims of the members of the Class and are based on the same legal theories.

52.    **Adequacy:** Plaintiffs will fairly and adequately represent and protect the interests of the proposed Class.  Plaintiffs do not have any interests antagonistic to the Class they seek to represent, and Plaintiffs are committed to the vigorous prosecution of this action.  Plaintiffs have retained counsel experienced in complex litigation of this nature to represent them.

53.    **Superiority:** A class action is superior to all other available methods for the fair and efficient adjudication of this controversy because, *inter alia*, common questions of law or fact predominate over individual issues, concentrating these claims in a single forum would avoid inconsistent adjudications, and the expense and burden of individual litigation would make it impracticable or impossible for members of the Class to prosecute their claims individually.  The

CLASS ACTION COMPLAINT

litigation and trial of the Class-wide claims is manageable.

54.    Unless FCA is required to change its unfair and deceptive practices, FCA will continue to commit the violations described herein, and the members of the Class (and the general public) will continue to be misled.  FCA has acted and refused to act on grounds generally applicable to the Class, making appropriate final injunctive relief with respect to the Class as a whole.

## TOLLING OF THE STATUTE OF LIMITATIONS

55.    Upon information and belief, FCA has known that the Vehicles produce higher emissions than it led consumers to believe, and FCA has effectively concealed such information from Plaintiffs and the members of the Class by installing defeat devices in the Vehicles so that the Vehicles' high emissions production would go undetected during emissions testing.  Because the defeat devices cause the Vehicles to appear compliant with regulations and requirements regarding emissions production, Plaintiffs and the members of the Class had no way of knowing that the Vehicles were, in fact, non-compliant.

56.    Plaintiffs and the members of the Class had no reason to suspect that their Vehicles were non-compliant, as emissions testing indicated otherwise, and no exercise of reasonable diligence would lead Plaintiffs and the members of the Class to discover that the Vehicles were non-compliant.  Thus, the applicable statutes of limitations have been tolled.

57.    Given FCA's failure to disclose this fact, and given its concerted effort to actively conceal, mislead, and deceive consumers regarding the clean and environmentally friendly nature of the Vehicles, FCA is estopped from relying on any statutes of limitations to defeat Plaintiffs' claims.

## COUNT I
### Violation of the California Consumer Legal Remedies Act
### Cal. Civ. Code § 1750, *et seq.*
### (On Behalf of the California Class)

58.    Plaintiffs repeat and incorporate by reference herein the allegations set forth above.

59.    FCA is a "person" within the meaning of the CLRA.

60.    Ramirez and Trejos and the members of the California Class are "consumers" and the Vehicles constitute "goods" for the purposes of the CLRA.

61.    FCA engaged in conduct that violates the CLRA in the following ways:

a.   FCA violated Cal. Civ. Code § 1750(5) by representing the EcoDiesel engine as having characteristics, uses, and benefits of a clean, environmentally friendly engine while knowing that the statements were false because the Vehicles produced unlawfully high emissions and thus were neither clean nor environmentally friendly;

b.   FCA violated Cal. Civ. Code § 1750(7) by representing the Vehicles as "class-leading" and "clean" while knowing that the statements were false because the Vehicles produced unlawfully high emissions;

c.   FCA violated Cal. Civ. Code § 1750(9) by advertising the Vehicles as clean and environmentally friendly, although FCA intended to sell them equipped with defeat devices to falsely make the Vehicles appear clean and environmentally friendly, when, in fact, they were producing unlawfully high emissions; and

d.   FCA violated Cal. Civ. Code § 1750(16) by representing that the Vehicles were clean and environmentally friendly although, when they were supplied to consumers, they produced unlawfully high levels of omissions.

62.   FCA possessed exclusive and superior knowledge about the fact that the vehicles emitted unlawfully high emissions because FCA installed the vehicles with defeat devices, which assisted the vehicles in cheating emissions tests to appear compliant, when, in fact, they were non-compliant because the emissions control systems were less effective during regular use.

63.   Nonetheless, FCA intentionally and knowingly misled Ramirez and Trejos and the members of the California Class, misrepresenting the vehicles as clean and environmentally friendly and actively concealing the fact that they are not.

64.   Such conduct was likely to deceive, and did deceive, reasonable consumers, and the information misrepresented and/or concealed would be material to a reasonable consumer in deciding to purchase or lease a vehicle and in considering how much to pay for a vehicle.

65.   In accordance with Cal. Civ. Code § 1780(a), Ramirez and Trejos and the members of the California Class seek injunctive and equitable relief for FCA's violations of the CLRA and reserve the right to seek damages.

**COUNT II**
**Violation of the California Unfair Competition Law**
**Cal. Bus. & Prof. Code § 17200, *et seq.***
**(On Behalf of the California Class)**

66.   Plaintiffs repeat and incorporate by reference herein the allegations set forth above.

67.   The UCL prohibits unfair competition, which § 17200 defines as an "unlawful, unfair, or fraudulent business act or practice."

68.     FCA has violated the unlawful prong of § 17200 by its violations of the CLRA, as set forth above.

69.     FCA has also violated the unfair prong of § 17200 through the acts described herein, including, *inter alia*, by misrepresenting the vehicles as environmentally friendly and clean diesel; installing defeat devices in the vehicles that enabled the vehicles to pass emissions testing (thus appearing compliant) and then reduced the effectiveness of the emissions control systems during regular use, (thus rendering them non-compliant); failing to disclose to consumers that the vehicles were installed with defeat devices; and failing to disclose to consumers that the defeat devices allowed the vehicles to appear more environmentally friendly than they are.  As a result, Ramirez and Trejos and the members of the California class relied on FCA's misrepresentations in deciding to purchase the vehicles. The misrepresentations and/or omissions were material information that would have influenced Ramirez and Trejos and the California Class members' decisions.

70.     FCA has additionally violated the fraudulent prong of § 17200 insofar as the misrepresentations and omissions related to the EcoDiesel engine's environmental friendliness were likely to deceive a reasonable consumer, and the information would be material to a reasonable consumer.

71.     As a direct and proximate result of FCA's deceptive conduct, Ramirez and Trejos and the members of the California Class have been damaged.

72.     FCA continues to engage in this pattern of deceptive conduct, and, thus, Ramirez and Trejos and the members of the California Class seek to enjoin FCA from continuing its unfair, unlawful, and deceptive practices.

**COUNT III**
**Violation of the California False Advertising Law**
**Cal. Bus. & Prof. Code § 17500, *et seq.***
**(On Behalf of the California Class)**

73.     Plaintiffs repeat and incorporate by reference herein the allegations set forth above.

74.     Section 17500 of the FAL provides: "It is unlawful . . . with the intent directly or indirectly to dispose of real or personal property . . . to induce the public to enter into any obligation relating thereto, to make or disseminate or cause to be made or disseminated . . . from this state before

CLASS ACTION COMPLAINT

the public in any state, in any newspaper or other publication, or any advertising device, . . . or in any other manner or means whatever, including over the Internet, any statement . . . which is untrue or misleading, and which is known, or which by the exercise of reasonable care should be known, to be untrue or misleading."

75. FCA has violated § 17500 because it disseminated advertisements that were both misleading, insofar as they omitted material information, and flatly untrue. In particular, FCA touted the Vehicles' environmental friendliness, but failed to disclose that the Vehicles only *appeared* environmentally friendly because FCA installed defeat devices in them, which allowed the Vehicles to pass emissions testing but then reduced the effectiveness of the emissions control systems during regular use. As a result, the Vehicles, in fact, produced unlawfully high emissions levels. These misrepresentations and omissions were material and likely to deceive a reasonable consumer, and FCA intended to deceive consumers.

76. Ramirez and Trejos and the members of the California Class relied on FCA's misrepresentations and omissions in deciding to purchase the Vehicles, and have been damaged as a direct and proximate result. Had Ramirez and Trejos and the members of the California Class known that the Vehicles actually produced unlawfully high emissions, they would not have purchased or leased the Vehicles, or would have paid less for them.

77. FCA engaged, and continues to engage, in a pattern of wrongful conduct in the course of selling and leasing the Vehicles in the State of California. Plaintiffs Ramirez and Trejos, therefore, seek to enjoin FCA from continuing to engage in this pattern of wrongful, deceptive conduct, and seek such other relief as set forth below.

## COUNT IV
### Fraudulent Concealment
### (On Behalf of the California Class)

78. Plaintiffs repeat and incorporate by reference herein the allegations set forth above.

79. FCA concealed the fact that the Vehicles produced unlawfully high levels of emissions during regular use, which was material because FCA touted the Vehicles' environmental friendliness in an effort to induce consumers to buy them.

CLASS ACTION COMPLAINT

80.    FCA also concealed the fact that it had installed defeat devices in the Vehicles, which was material because the defeat devices allowed the Vehicles to appear compliant during emissions testing, although the Vehicles actually produced unlawfully high emissions levels during regular use.

81.    FCA had a duty to disclose these facts to Ramirez and Trejos and the members of the California Class because FCA represented that the Vehicles were clean and environmentally friendly when FCA knew that, in reality, the Vehicles only *appeared* environmentally friendly because the defeat devices enabled the Vehicles to cheat emissions testing.  FCA stood in a superior position of knowledge as the merchant of the Vehicles, and a reasonable consumer using reasonable diligence could not discover the Deception, particularly because the defeat devices caused the Vehicles to appear compliant when tested.

82.    FCA intentionally defrauded Ramirez and Trejos and the members of the California Class by misrepresenting the clean and environmentally friendly nature of the Vehicles and concealing the fact that the only reason the Vehicles maintained their appearance as clean and environmentally friendly is because FCA installed defeat devices in them.  FCA misrepresented the Vehicles' ability to reduce emissions, and concealed the fact that the Vehicles only appeared to reduce emissions because of the defeat devices, in an effort to induce Ramirez and Trejos and the members of the California Class to purchase or lease the Vehicles.

83.    Ramirez and Trejos and the members of the California Class had no way of knowing, or even suspecting, that the Vehicles were not clean and environmentally friendly because the defeat devices installed in their Vehicles allowed the Vehicles to cheat emissions testing and appear EPA compliant.  Had Ramirez and Trejos and the members of the California Class known that the Vehicles did not reduce emissions, as FCA touted, Plaintiffs Ramirez and Trejos and the members of the California Class would not have purchased or leased the Vehicles, or would have paid less for them.

84.    As a direct and proximate result of FCA's conduct alleged herein, Ramirez and Trejos and the members of the California Class were damaged.

CLASS ACTION COMPLAINT

**COUNT V**
**Violation of the Colorado Consumer Protection Act**
**Colo. Rev. Stat. § 6-1-101, *et seq.***
**(On Behalf of the Colorado Class)**

85.     Plaintiffs repeat and incorporate by reference herein the allegations set forth above.

86.     FCA and Hutchison and the members of the Colorado Class are "persons" within the meaning of the CCPA.

87.     FCA engaged in deceptive trade practices that violate the CCPA in the following ways:

   a.     FCA violated Colo. Rev. Stat. § 6-1-105(1)(e) by falsely representing the engine as having characteristics, uses, and benefits of a clean, environmentally friendly engine while knowing that the statements were false because the Vehicles produced unlawfully high emissions and, thus, were neither clean nor environmentally friendly;

   b.     FCA violated Colo. Rev. Stat § 6-1-105(1)(g) by representing the Vehicles as "class-leading" and "clean" while knowing that the statements were false because the Vehicles produced unlawfully high emissions;

   c.     FCA violated Colo. Rev. Stat § 6-1-105(1)(i) by advertising the Vehicles as clean and environmentally friendly, although FCA intended to sell them equipped with defeat devices to falsely make the Vehicles appear clean and environmentally friendly, when, in fact, they were producing unlawfully high emissions; and

   d.     FCA violated Colo. Rev. Stat § 6-1-105(1)(u) by failing to disclose the material fact that it had installed defeat devices in the Vehicles so that the Vehicles appeared environmentally friendly and emissions compliant, and consumers would rely upon FCA's vigorous representations of the Vehicles as environmentally friendly and decide to purchase or lease the Vehicles.

88.     FCA possessed exclusive knowledge about the fact that the Vehicles emitted unlawfully high levels of emissions because FCA installed the Vehicles with defeat devices, which assisted the Vehicles in cheating emissions tests to appear compliant, when, in, fact they were non-compliant because the emissions control systems were less effective during regular use.

89.     Nonetheless, FCA, in bad faith, intentionally and knowingly misled Hutchison and the members of the Colorado Class, misrepresenting the Vehicles as clean and environmentally friendly and actively concealing the fact that they are not.

90.     Such conduct was likely to deceive, and did deceive reasonable consumers, and the information misrepresented and/or concealed would be material to a reasonable consumer in deciding to purchase or lease a Vehicle and in considering how much to pay for a Vehicle.

91.     As a direct and proximate result of the conduct alleged herein, Hutchison and the members of the Colorado Class were damaged.

92.     Because FCA engaged in bad faith conduct, as defined in Colo. Rev. Stat § 6-1-113(2.3), Hutchison and the members of the Colorado Class are entitled to treble damages, costs, and attorneys' fees, pursuant to Colo. Rev. Stat § 6-1-113(a)(III).

**COUNT VI**
**Fraudulent Concealment**
**(On Behalf of the Colorado Class)**

93.     Plaintiffs repeat and incorporate by reference herein the allegations set forth above.

94.     FCA actively concealed the material fact that the Vehicles were not environmentally friendly and contained defeat devices, which assisted the Vehicles in cheating emissions testing so that they appeared environmentally friendly and EPA compliant.  This information should have been disclosed to Hutchison and the members of the Colorado Class, who purchased or leased their Vehicles with the expectation that they would be as environmentally friendly and clean as FCA vigorously advertised.

95.     FCA knowingly concealed the environmentally unfriendly nature of the Vehicles by secretly installing the Vehicles with the defeat devices, which allowed FCA to carry on the ruse that the Vehicles were as environmentally friendly as advertised.

96.     Hutchison and the members of the Colorado Class had no reason of knowing, or even suspecting, that the Vehicles were not as environmentally friendly as FCA touted and actually produced unlawfully high levels of emissions, because the defeat devices installed in their Vehicles allowed the Vehicles to cheat emissions testing and appear EPA compliant.

97.     FCA intended to mislead Hutchison and the members of the Colorado Class about the environmentally friendly nature of the Vehicles, so that Hutchison and the members of the Colorado Class would rely upon FCA's misrepresentations and omissions in deciding to purchase or lease the Vehicles.

98.     Had Hutchison and the members of the Colorado Class known that the Vehicles did not reduce emissions, as FCA touted, Hutchison and the members of the Colorado Class would not have

purchased or leased the Vehicles, or would have paid less for them.  As a direct and proximate result of FCA's conduct alleged herein, Hutchison and the members of the Colorado Class were damaged.

**COUNT VII**
**Violation of the Florida Deceptive and Unfair Trade Practices Act**
**Fla. Stat. § 501.201, *et seq.***
**(On Behalf of the Florida Class)**

99.      Plaintiffs repeat and incorporate by reference herein the allegations set forth above.

100.     Whitlock, Chorny, Goodrich, and Rodriquez are "consumers" for the purposes of the FDUTPA.

101.     FCA has engaged in "trade or commerce," within the meaning of the FDUTPA, by advertising and distributing the Vehicles to consumers within the State of Florida.

102.     FCA's actions described herein constitute "unfair methods of competition, unconscionable acts or practices, and unfair or deceptive acts or practices," proscribed by the FDUTPA. Such unlawful actions include, but are not limited to:

    a.    Representing that the EcoDiesel engine has characteristics, uses, and benefits of a clean, environmentally friendly engine while knowing that the statements were false because the Vehicles produced unlawfully high emissions and thus were neither clean nor environmentally friendly;

    b.    Installing defeat devices in the Vehicles that assist the Vehicles in passing emissions testing, so that they carry on the ruse of environmental friendliness, and then reduce the effectiveness of the emissions control system during regular use, such that the Vehicles produced high levels of emissions; and

    c.    Concealing the fact that the Vehicles contained defeat devices from consumers, and failing to disclose that the Vehicles only appeared environmentally friendly because of the defeat device's manipulation.

103.     FCA's intentional and knowing misrepresentations and omissions were likely to deceive a reasonable consumer, and did deceive many consumers, including Whitlock, Chorny, Goodrich and Rodriguez.  Whitlock, Chorny, Goodrich, and Rodriguez and the members of the Florida Class could not uncover the Deception with reasonable diligence.  Had they known about the Deception, Whitlock, Chorny, Goodrich, and Rodriguez and the members of the Florida Class would not have purchased or leased the Vehicles, or would have paid less for them.

104.     FCA engaged, and continues to engage, in a pattern of wrongful conduct in the course of selling and leasing the Vehicles in the State of Florida. Whitlock, Chorny, Goodrich, and Rodriguez,

CLASS ACTION COMPLAINT

therefore, seek to enjoin FCA from continuing to engage in this pattern of wrongful, deceptive conduct, and seek such other relief as set forth below.

105.    As a direct and proximate result of FCA's intentional and knowing effort to mislead Whitlock, Chorny, Goodrich, and Rodriguez and the members of the Florida Class, Whitlock, Chorny, Goodrich, and Rodriguez and the members of the Florida Class have been damaged, and are entitled to damages, attorneys' fees, and costs.

**COUNT VIII**
**Fraudulent Concealment**
**(On Behalf of the Florida Class)**

106.    Plaintiffs repeat and incorporate by reference herein the allegations set forth above.

107.    FCA actively misrepresented the Vehicles' environmental friendliness, concealing the fact that the Vehicles actually produced unlawfully high levels of emissions.  FCA also concealed the fact that it had installed defeat devices in the Vehicles, which masked the fact that the Vehicles produced high levels of emissions by enabling them to cheat emissions testing.  These facts constitute material information, particularly because FCA heavily marketed and sold the Vehicles under the image of clean diesel.  FCA knew or should have known that these facts should have been disclosed because a reasonable consumer would consider them material in deciding to purchase and/or lease the Vehicles.

108.    FCA had a duty to disclose these facts because it stood in a superior position of knowledge.  FCA had exclusive knowledge about the unlawfully high levels of emissions and the defeat devices, and FCA knew that the defeat devices hindered consumers' ability to detect the fact that the Vehicles produced high levels of emissions.  A reasonable consumer using reasonable diligence could not discover the Deception, particularly because the defeat devices caused the Vehicles to appear compliant during emissions testing.

109.    In deciding to purchase and/or lease the Vehicles, Whitlock, Chorny, Goodrich, and Rodriguez and the members of the Florida Class detrimentally relied on FCA's representations about the Vehicles' environmental friendliness, and as a direct and proximate result, Whitlock, Chorny, Goodrich,

CLASS ACTION COMPLAINT

and Rodriguez and the members of the Florida Class were damaged.  Had Whitlock, Chorny, Goodrich, and Rodriguez and the members of the Florida Class known that the Vehicles did not reduce emissions, as FCA touted, Whitlock, Chorny, Goodrich, and Rodriguez and the members of the Florida Class would not have purchased or leased the Vehicles, or would have paid less for them.

**COUNT IX**
**Indiana Deceptive Consumer Sales Practices Act**
**I.C. § 24-5-0.5, *et seq.***
**(On Behalf of the Indiana Class)**

110.    Plaintiffs repeat and incorporate by reference herein the allegations set forth above.

111.    Brake and FCA are "persons" within the meaning of the IDCSPA.

112.    The conduct alleged herein constitutes an "incurable deceptive act" for the purposes of the IDCSPA because FCA committed such conduct as part of a scheme with the intent to defraud and/or mislead the consumers as to the environmental friendliness of the Vehicles.

113.    The IDCSPA proscribes "commit[ing] an unfair, abusive, or deceptive, act, omission, or practice in connection with a consumer transaction," whether such act, omission, or practice "occurs before, during, or after the transaction."

114.    FCA engaged in unlawful and deceptive acts and omissions in violation of the IDCSPA by misrepresenting the environmental friendliness of the Vehicles, and actively concealing the fact that the Vehicles actually produced unlawfully high levels of emissions, which went undetected because FCA installed defeat devices in the Vehicles to cheat emissions testing so that the Vehicles would appear compliant.  FCA failed to disclose that defeat devices were installed in the Vehicles or that the Vehicles were much less environmentally friendly than advertised.  FCA knew that such information would be material to a reasonable consumer, in considering whether to purchase or lease the Vehicles and how much to pay for them.  Brake and the members of the Indiana Class were deceived by FCA's misrepresentations and omissions regarding the environmental friendliness of the Vehicles.

115.    Providing notice to FCA was not required here, pursuant to I.C. 24-5-0.5-5, because the conduct engaged in by FCA constitutes an "incurable deceptive act."

116.    As a direct and proximate result of FCA's unlawful and deceptive acts and omissions, Brake and the members of the Indiana Class have been damaged, and are entitled to recover treble damages and attorneys' fees and costs, pursuant to I.C. 24-5-0.5-4(a).

**COUNT X**
**Fraudulent Concealment**
**(On Behalf of the Indiana Class)**

117.    Plaintiffs repeat and incorporate by reference herein the allegations set forth above.

118.    FCA stood in a superior position of knowledge as the merchant of the Vehicles, and FCA had exclusive knowledge that: (i) the Vehicles produced unlawfully high levels of emissions (although FCA advertised that the Vehicles were environmentally friendly), and (ii) the Vehicles contained defeat devices (which enabled the Vehicles to cheat emissions testing).  Thus, FCA had a duty to disclose this information to consumers.

119.    However, FCA intentionally concealed the fact that the Vehicles produced unlawfully high levels of emissions, and successfully kept this fact a secret by installing defeat devices in the Vehicles.  FCA also intentionally concealed the fact that it had installed such devices so that the Vehicles would continue to appear environmentally friendly.

120.    Brake and the members of the Indiana Class had no way of knowing, or even suspecting, that the Vehicles were not clean and environmentally friendly because the defeat devices installed in their Vehicles allowed the Vehicles to cheat emissions testing and appear EPA compliant.  In purchasing and/or leasing their Vehicles, Brake and the members of the Indiana Class relied upon FCA's representations as to the environmental friendliness of the Vehicles.  Had Brake and the members of the Indiana Class known that the Vehicles did not reduce emissions, as FCA touted, they would not have purchased or leased the Vehicles, or would have paid less for them.

121.    As a direct and proximate result of FCA's conduct alleged herein, Brake and the members of the Indiana Class were damaged.

**COUNT XI**
**Violation of the Maryland Consumer Protection Act**
**Md. Code Ann., Com. Law. § 13-301, *et seq.***
**(On Behalf of the Maryland Class)**

122.    Plaintiffs repeat and incorporate by reference herein the allegations set forth above.

CLASS ACTION COMPLAINT

123.    Section 13-303 of the MCPA prohibits persons from engaging in any unfair or deceptive

trade practices, as defined in the MCPA, in the sale or lease of any consumer goods or in the offer for

sale or lease of consumer goods, regardless of whether the consumer was actually misled, deceived, or

damaged as a result (Md. Code Ann., Com. Law § 13-302).

124.    FCA engaged in unfair and deceptive practices, as proscribed by the MCPA, in the

following ways:

a.    FCA made false and misleading oral and written statements regarding the Vehicle's environmental friendliness, although FCA knew that the Vehicles produced unlawfully high levels of emissions, which had the capacity, tendency, and the effect of deceiving or misleading consumers who relied on such statements;

b.    FCA represented that the Vehicles had the characteristic of being environmentally friendly and clean diesel, which they did not;

c.    FCA represented that the goods were environmentally friendly and clean diesel, although the Vehicles were not of that standard because they produced unlawfully high levels of emissions; and

d.    FCA failed to disclose the material fact that the Vehicles contained defeat devices, which allowed the Vehicles to pass emissions testing and appear EPA compliant and then reduced the effectiveness of the emissions control system during regular use, causing the Vehicles to produce unlawfully high levels of emissions.

125.    FCA made these unfair and deceptive statements in advertising the Vehicles for sale or

lease and in selling the Vehicles to Sayers and the members of the Maryland Class.

126.    As a direct and proximate result of FCA's violation of the MCPA, Sayers and the

members of the Maryland Class have been damaged.

## COUNT XII
### Fraudulent Concealment
### (On Behalf of the Maryland Class)

127.    Plaintiffs repeat and incorporate by reference herein the allegations set forth above.

128.    As a merchant selling the Vehicles to Sayers and the members of the Maryland Class,

FCA owed Sayers and the members of the Maryland Class a duty to disclose the material fact that: (i)

the Vehicles were not environmentally friendly as FCA touted, and (ii) FCA installed defeat devices in

the Vehicles so that they would pass emissions testing and appear environmentally friendly, although

CLASS ACTION COMPLAINT

they produce unlawfully high levels of emissions during regular use, because the effectiveness of the emissions control systems is reduced.

129.     FCA failed to disclose the fact that the Vehicles were not the clean, environmentally friendly automobiles that FCA vigorously advertised and failed to disclose the presence of the defeat devices in the Vehicle.

130.     By failing to disclose the true nature of the Vehicles and the presence of the defeat devices in the Vehicles, FCA intended to deceive Sayers and the members of the Maryland Class, leading them to believe that the Vehicles actually were environmentally friendly.

131.     Sayers and the members of the Maryland Class justifiably relied on FCA's representations and omissions in purchasing or leasing their Vehicles, and they had no way of knowing, or even suspecting, the Vehicles' true nature because the defeat devices caused the Vehicles to appear to be environmentally friendly and emissions compliant.  Had Sayers and the members of the Maryland Class known that the Vehicles did not reduce emissions, as FCA touted, they would not have purchased or leased the Vehicles, or would have paid less for them.

132.     As a direct and proximate result of FCA's conduct alleged herein, Sayers and the members of the Maryland Class were damaged.

## COUNT XIII
### Violation of the Minnesota Prevention of Consumer Fraud Act
### Minn. Stat. § 325D.43, *et seq.*
### (On Behalf of the Minnesota Class)

133.     Plaintiffs repeat and incorporate by reference herein the allegations set forth above.

134.     FCA engaged in conduct that violates the MPCFA in the following ways:

   a.     FCA violated Minn. Stat. § 325D.44(5) by representing the EcoDiesel engine as having characteristics, uses, and benefits of a clean, environmentally friendly engine while knowing that the statements were false because the Vehicles produced unlawfully high emissions and thus were neither clean nor environmentally friendly;

   b.     FCA violated Minn. Stat. § 325D.44(7) by representing the Vehicles as "class-leading" and "clean" while knowing that the statements were false because the Vehicles produced unlawfully high emissions;

   c.     FCA violated Minn. Stat. § 325D.44(9) by advertising the Vehicles as clean and environmentally friendly, although FCA intended to sell them equipped with defeat devices to falsely make the Vehicles appear clean and environmentally friendly, when, in fact, they were producing unlawfully high emissions; and

-30-

CLASS ACTION COMPLAINT

d.   FCA violated Minn. Stat. § 325D.44(13) by creating a likelihood of confusion among consumers as to the "clean" quality of the Vehicles.

135.   FCA's deceptive scheme was carried out in Minnesota and affected Feist and the members of the Minnesota Class.

136.   FCA also failed to advise the public about what it knew about the EcoDiesel engine, and instead took steps to mislead the public regarding the Vehicles' effectiveness at reducing emissions.  By installing defeat devices, FCA masked the fact that the Vehicles produced unlawfully high emissions and made the Vehicles appear compliant.

137.   As a direct and proximate result of FCA's deceptive conduct and violation of Minn. Stat. § 325D.44, *et seq.*, Feist and the members of the Minnesota Class have been damaged.

**COUNT XIV**
**Violation of the Minnesota Prevention of Consumer Fraud Act**
**Minn. Stat. § 325F.68 *et seq.***
**(On Behalf of the Minnesota Class)**

138.   Plaintiffs repeat and incorporate by reference herein the allegations set forth above.

139.   Feist and FCA are "persons" within the meaning of the MPCFA.

140.   The Vehicles constitute "merchandise" for the purposes of the MPCFA.

141.   FCA's conduct violated the MPCFA insofar as FCA: (i) misrepresented the Vehicles as clean and environmentally friendly while concealing the Vehicles' true nature, (ii) deceptively masked the fact that the Vehicles were neither environmentally friendly nor clean by installing defeat devices in them, and (iii) actively concealed the fact that the Vehicles produced unlawfully high levels of emissions.

142.   FCA's deceptive scheme was carried out in Minnesota and affected Feist and the members of the Minnesota Class.

143.   Feist and the other members of the Minnesota Class reasonably relied on FCA's misrepresentations that the Vehicles were clean and environmentally friendly when deciding to purchase or lease the Vehicles.  Feist and the other members of the Minnesota Class were misled by FCA's silence as to the Vehicles' true quality.

CLASS ACTION COMPLAINT

144.    Had FCA disclosed all material information regarding the Vehicles, Feist and the other members of the Minnesota Class would not have purchased or leased the Vehicles, or would have paid less for them.

145.    Through these deceptive statements and misleading omissions, FCA violated Minn. Stat. § 325F.69 and proximately caused Feist and the Minnesota Class to be damaged.

**COUNT XV**
**Fraudulent Concealment**
**(On Behalf of the Minnesota Class)**

146.    Plaintiffs repeat and incorporate by reference herein the allegations set forth above.

147.    FCA consistently represented that the Vehicles were clean and environmentally friendly, and actively concealed the fact that they actually produced unlawfully high levels of emissions by installing defeat devices in them, which enabled the Vehicles to cheat emissions testing so that they appeared compliant.

148.    Through FCA's conduct alleged herein, FCA actively concealed its false advertising and deceptive advertising campaign, that was material information Feist and the Minnesota Class relied upon in deciding whether to purchase and/or lease the Vehicles.

149.    FCA knew that its representations regarding the Vehicles' environmental friendliness were false because FCA knew that the Vehicles could not pass emissions testing (due to their high production of emissions) without defeat devices.

150.    Feist and the members of the Minnesota Class had no way of knowing, or even suspecting, that the Vehicles were not clean and environmentally friendly because the defeat devices installed in their Vehicles allowed the Vehicles to cheat emissions testing and appear EPA compliant. Had Feist and the members of the Minnesota Class known that the Vehicles did not reduce emissions, as FCA touted, they would not have purchased or leased the Vehicles, or would have paid less for them.

151.    As a direct and proximate result of FCA's conduct alleged herein, Feist and the members of the Minnesota Class were damaged.

CLASS ACTION COMPLAINT

**COUNT XVI**
**Violation of the Missouri Merchandising Practices Act**
**Mo. Rev. Stat. § 407.010,** *et seq.*
**(On Behalf of the Missouri Class)**

152.    Plaintiffs repeat and incorporate by reference herein the allegations set forth above.

153.    Betsworth and FCA are "persons" within the meaning of the MMPA.

154.    The Vehicles constitute "merchandise" within the meaning of the MMPA.

155.    FCA engaged in "trade" or "commerce," for the purposes of the MMPA, by advertising, offering for sale, selling, and distributing the Vehicles to consumers in the State of Missouri.

156.    FCA's practices described herein constitute "deception, fraud, false pretense, false promise, misrepresentation, unfair practice, or the concealment, suppression, or omission of any material fact in connection with the sale or advertisement of any merchandise in trade or commerce," proscribed by the MMPA.  Such unlawful practices include, but are not limited to:

      a.    Representing that the EcoDiesel engine has characteristics, uses, and benefits of a clean, environmentally friendly engine while knowing that the statements were false because the Vehicles produced unlawfully high emissions and thus were neither clean nor environmentally friendly;

      b.    Installing defeat devices in the Vehicles that assist the Vehicles in passing emissions testing, so that they carry on the ruse of environmental friendliness, and then reduce the effectiveness of the emissions control system during regular use, such that the Vehicles produced high levels of emissions; and

      c.    Concealing the fact that the Vehicles contained defeat devices from consumers, and failing to disclose that the Vehicles only appeared environmentally friendly because of the defeat device's manipulation.

157.    Betsworth and the members of the Missouri Class purchased or leased the Vehicles for "personal, family or household purposes" and reasonably relied on FCA's misrepresentations and omissions in deciding to purchase or lease the Vehicles.

158.    As a direct and proximate result of FCA's conduct alleged herein, Betsworth and the members of the Missouri Class were damaged.  Had Betsworth and the members of the Missouri Class known about the Deception, they would not have purchased the Vehicles, or would have paid less for them.  Betsworth and the members of the Missouri Class seek damages in an amount to be proven at trial.

159.    Betsworth and the members of the Missouri Class also seek punitive damages and attorneys' fees, as FCA willfully and knowingly engaged in a course of manipulative, deceptive, and fraudulent conduct, with the intent to deceive, and FCA's conduct was likely to deceive a reasonable consumer, and did, in fact, deceive consumers.

**COUNT XVII**
**Fraudulent Concealment**
**(On Behalf of the Missouri Class)**

160.    Plaintiffs repeat and incorporate by reference herein the allegations set forth above.

161.    FCA's false representation of the Vehicles as clean diesel and environmentally friendly was material because FCA vigorously marketed the Vehicles with an emphasis on their environmental friendliness.

162.    FCA knew that its representations regarding the Vehicles were false because it knew that the Vehicles actually produced unlawfully high levels of emissions.  FCA masked this fact by installing defeat devices in the Vehicles, enabling their high emissions production to go undetected during emissions testing.  FCA concealed the use of the defeat devices to perpetuate its fraud.

163.    FCA marketed the Vehicles as environmentally friendly in an effort to appeal to consumers looking for clean vehicles and induce them to purchase the Vehicles.

164.    Betsworth and the members of the Missouri Class were unaware of the falsity of FCA's representation, and they could not detect the misrepresentation with reasonable diligence because the defeat devices caused the Vehicles to appear compliant with EPA regulations.

165.    Betsworth and the members of the Missouri Class reasonably relied on FCA's representations about its products when deciding to purchase and/or lease the Vehicles, and as a direct and proximate result, Betsworth and the members of the Missouri Class were damaged.

**COUNT XVIII**
**Violation of the North Carolina Unfair Trade Practices Act**
**N.C. Gen. Stat. § 75-1.1, *et seq.***
**(On Behalf of the North Carolina Class)**

166.    Plaintiffs repeat and incorporate by reference herein the allegations set forth above.

167.    The NCUTPA prohibits "unfair or deceptive acts or practices in or affecting commerce."

CLASS ACTION COMPLAINT

168.     FCA engaged in unfair or deceptive acts or practices insofar as FCA vigorously marketed the Vehicles to consumers as environmentally friendly and clean diesel, but failed to disclose that the Vehicles actually produced unlawfully high levels of emissions, which FCA effectively concealed by installing defeat devices in the Vehicles so that they would appear compliant during EPA emissions testing.

169.     These unfair and deceptive acts affected commerce to the extent that consumers relied, to their detriment, on FCA's false representations that the Vehicles were environmentally friendly and clean in deciding to purchase or lease the Vehicles.

170.     Had McConnell and the members of the North Carolina Class known that the Vehicles were not as advertised, they would not have purchased or leased the Vehicles, or would have paid less for them.

171.     As a direct and proximate result of FCA's unfair and deceptive conduct, McConnell and the members of the North Carolina Class have been damaged, and are entitled to recover treble damages, pursuant to N.C. Gen. Stat. § 75-16.

172.     McConnell and the members of the North Carolina Class are also entitled to recover attorneys' fees, pursuant to N.C. Gen. Stat. § 75-16.1, because FCA willfully engaged in the unfair and deceptive conduct described herein insofar as it intentionally marketed the Vehicles as environmentally friendly and clean, although it knew the Vehicles were neither environmentally friendly nor clean, and FCA has unjustifiably refused to offer any sort of remedy for its unfair and deceptive conduct or for the injury that such conduct caused McConnell and the members of the North Carolina Class.

## COUNT XIX
### Fraudulent Concealment
### (On Behalf of the North Carolina Class)

173.     Plaintiffs repeat and incorporate by reference herein the allegations set forth above.

174.     FCA has actively concealed the fact that the Vehicles, which it markets as environmentally friendly, produce unlawfully high levels of emissions, and FCA has effectively concealed this fact by installing defeat devices in the Vehicles.

175.    This is reasonably calculated to deceive consumers because the defeat devices enable the Vehicles to pass emissions testing (and appear compliant), although FCA knew that the Vehicles could not pass emissions testing (due to their high production of emissions) without defeat devices.

176.    By vigorously marketing the Vehicles as environmentally friendly and installing defeat devices to allow the Vehicles to appear as environmentally friendly as touted (when, in reality, they were not), FCA intended to deceive consumers.

177.    As a result, McConnell and the members of the North Carolina Class were deceived by FCA.    They had no way of knowing, or even suspecting, that the Vehicles were not clean and environmentally friendly because the defeat devices installed in their Vehicles allowed the Vehicles to cheat emissions testing and appear EPA compliant.    Had McConnell and the members of the North Carolina Class known that the Vehicles did not reduce emissions, as FCA touted, they would not have purchased or leased the Vehicles, or would have paid less for them.

178.    As a direct and proximate result of FCA's conduct alleged herein, McConnell and the members of the North Carolina Class were damaged.

## COUNT XX
**Violation of the Pennsylvania Unfair Trade Practices and Consumer Protection Law
73 P.S. § 201-1, *et seq.*
(On Behalf of the Pennsylvania Class)**

179.    Plaintiffs repeat and incorporate by reference herein the allegations set forth above.

180.    Vaughan and FCA are "persons" within the meaning of the PUTPCPL.

181.    FCA engaged in "trade" and "commerce," for the purposes of the PUTPCPL, by advertising, offering for sale, selling, and distributing the Vehicles to consumers within the Commonwealth of Pennsylvania.

182.    FCA's actions described herein constituted "unfair methods of competition" and "unfair or deceptive acts or practices" in the following ways:

    a.    FCA represented that the EcoDiesel engine had characteristics and benefits of a clean, environmentally friendly engine while knowing that the statements were false because the Vehicles produced unlawfully high emissions and thus were neither clean nor environmentally friendly;

    b.    FCA advertised the Vehicles as clean and environmentally friendly, but FCA did not intend to sell the clean and environmentally friendly Vehicles advertised. Instead, FCA intended to make the Vehicles falsely appear clean and

-36-

CLASS ACTION COMPLAINT

environmentally friendly by installing defeat devices in them, when, in fact, the Vehicles were producing unlawfully high emissions;

c.    FCA misrepresented the nature of the Vehicles, insofar as FCA vigorously advertised the Vehicles' environmental friendliness while knowing that the Vehicles produced unlawfully high levels of emissions; and

d.    FCA engaged in fraudulently and deceptively installing the defeat devices in the Vehicles, and failed to disclose that fact to consumers, knowing that the defeat devices would assist the Vehicles in passing emissions testing, and then reduce the effectiveness of the emissions control system during regular use.    This deceptive and fraudulent conduct created a likelihood of confusion among consumers as to the environmental friendliness of their Vehicles.

183.    Vaughan and the members of the Pennsylvania Class purchased or leased the Vehicles for "personal, family or household purposes" and reasonably relied on FCA's misrepresentations and omissions in deciding to purchase or lease the Vehicles.

184.    As a direct and proximate result of FCA's conduct alleged herein, Vaughan and the members of the Pennsylvania Class were damaged.  Had Vaughan and the members of the Pennsylvania Class known about the Deception, they would not have purchased or leased the Vehicles, or would have paid less for them.  Vaughan and the members of the Pennsylvania Class seek damages in an amount to be proven at trial.

185.    Vaughan and the members of the Pennsylvania Class also seek statutory damages and attorneys' fees, as FCA willfully and knowingly engaged in a course of manipulative, deceptive, and fraudulent conduct, with the intent to deceive, and FCA's conduct was likely to deceive a reasonable consumer, and did, in fact, deceive consumers.

186.    FCA engaged, and continues to engage, in a pattern of wrongful conduct in the course of selling and leasing the Vehicles in the Commonwealth of Pennsylvania.  Vaughan, therefore, seeks to enjoin FCA from continuing to engage in this pattern of wrongful and deceptive conduct.

## COUNT XXI
### Fraudulent Concealment
### (On Behalf of the Pennsylvania Class)

187.    Plaintiffs repeat and incorporate by reference herein the allegations set forth above.

188.    FCA's failure to disclose that the Vehicles produce unlawfully high levels of emissions and failure to disclose its use of defeat devices to make the Vehicles appear environmentally friendly constitute omissions.

189.    These omissions were material to Vaughan and the members of the Pennsylvania Class in deciding to purchase and/or lease the Vehicles, because they purchased and/or leased the Vehicles relying on FCA's false representations that the Vehicles were clean and environmentally friendly.

190.    FCA knew that its representations regarding the Vehicles' environmental friendliness were false because FCA knew that the Vehicles actually produced high levels of emissions, which it failed to disclose to consumers.  Instead, FCA concealed this fact from consumers by installing defeat devices in the Vehicles, so that the Vehicles could cheat emissions testing and appear compliant.

191.    FCA marketed the Vehicles as environmentally friendly in an effort to appeal to consumers looking for clean vehicles and induce them to purchase the Vehicles.

192.    Vaughan and the members of the Pennsylvania Class reasonably and justifiably relied on FCA's representations about its products, and had no way of knowing, or even suspecting, that the Vehicles were not clean and environmentally friendly because the defeat devices installed in their Vehicles allowed the Vehicles to cheat emissions testing and appear EPA compliant.  Had Vaughan and the members of the Pennsylvania Class known that the Vehicles did not reduce emissions, as FCA touted, Vaughan and the members of the Pennsylvania Class would not have purchased or leased the Vehicles, or would have paid less for them.

193.    As a direct and proximate result of FCA's conduct alleged herein, Vaughan and the members of the Pennsylvania Class were damaged.

**COUNT XXII**
**Fraudulent Concealment**
**(On Behalf of the Texas Class)**

194.    Plaintiffs repeat and incorporate by reference herein the allegations set forth above.

195.    FCA knew that the Vehicles, which it represented were clean and environmentally friendly, actually produced unlawfully high levels of emissions.

196.    FCA had a duty to disclose this fact to Plaintiff Alexander and the members of the Texas Class, but FCA instead engaged in a pattern of deceptive conduct to conceal this fact from them.  FCA concealed this information from Alexander and the members of the Texas Class so that Alexander and the members of the Texas Class would continue to believe FCA's misrepresentations about the

Vehicles' environmental friendliness, and consumers would continue to purchase and/or lease the Vehicles.

197. FCA effectively concealed its misrepresentations and omissions regarding the Vehicles' ability to reduce emissions—until the EPA discovered and publicized its deceptions in January 2017—by installing the defeat devices in the Vehicles, enabling the Vehicles to cheat emissions testing so that the Vehicles' high emissions production would go undetected.

### PRAYER FOR RELIEF

WHEREFORE, Plaintiffs, on behalf of themselves and members of the proposed Class, pray for judgment as follows:

a. Certification of the Class under Federal Rule of Civil Procedure 23 and appointment of Plaintiffs as representatives of the Class and their counsel as Class counsel;

b. Compensatory and other damages for economic and non-economic damages, including punitive and/or treble damages where permitted;

c. Awarding restitution and disgorgement of FCA's revenues or profits, reaped as a result of the unlawful conduct alleged in this Complaint, to Plaintiffs and the members of the proposed Class;

d. An Order enjoining FCA from continuing to engage in the pattern of unlawful, fraudulent, deceptive, and unfair conduct alleged in this Complaint;

e. Statutory pre-judgment and post-judgment interest on any amounts;

f. Payment of reasonable attorneys' fees and recoverable litigation expenses as may be allowable under applicable law; and

g. Such other and further relief as the Court deems just and appropriate.

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

## JURY DEMAND

Plaintiffs demand a trial by jury on all causes of action so triable.

Dated: March 17, 2017

/s/ James C. Shah
James C. Shah (SBN 260435)
Shepherd, Finkelman, Miller & Shah, LLP
44 Montgomery Street, Suite 650
San Francisco, CA 94104
Telephone: (415) 429-5272
Facsimile: (866) 300-7367
jshah@sfmslaw.com

Harris L. Pogust
Andrew J. Sciolla
Pogust Braslow & Millrood, LLC
Eight Tower Bridge, Suite 940
161 Washington Street
Conshohocken, PA 19428
Telephone: (610) 941-4202
Facsimile: (610) 941-4245
hpogust@pbmattorneys.com
asciolla@pbmattorneys.com

*Attorneys for Plaintiffs and the Proposed Classes*

CLASS ACTION COMPLAINT